UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JIA SHENG,

                Plaintiff,

v.

M&T BANK CORPORATION, and
MANUFACTURERS & TRADERS TRUST
COMPANY, d/b/a M&T BANK,

                Defendants.

No. 12 Civ. 01103 (HBS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE AT TRIAL**

On September 15, 2014, Plaintiff submitted the instant motion *in limine* for an Order, pursuant to Federal Rule of Evidence 408 and the ADR Plan of the Western District of New York (the "ADR Plan"), excluding from trial any evidence regarding offers of reinstatement made in the context of settlement negotiations by Defendants M&T Bank Corporation and Manufacturers and Traders Trust Company d/b/a M&T Bank (collectively "Defendants" or "M&T").[1] The parties have submitted their Trial Memoranda in the intervening time, and Defendants' submissions in that regard reveal more precisely the evidence Plaintiff seeks to exclude; specifically, the introduction of a communication made in connection with a confidential mediation (Defs.' Exhibit List, at D102 (ECF # 51)); and testimony regarding a telephonic settlement discussion between counsel for Plaintiff and Defendants in October 2012. (Ronan Decl. ¶¶ 4-5). These submissions cast into sharp relief the potential dangers Plaintiff's motion seeks to prevent. It is absolutely beyond cavil that this evidence—and, indeed, any reference whatsoever to the job offers in question—must be excluded by Rule 408 and

---

[1]     Defendants do not contest the exclusion of evidence related to the investigation or findings of the EEOC. (Defs.' Mem. Opp. Mot. *in Limine* 2 (ECF # 47)).

1

controlling Second Circuit authority. *See Pierce v. F.R. Tripler & Co.*, 955 F. 2d 820, 827-28 (2d Cir. 1992). More disturbingly, Defendants' disclosure of substantive communications made in connection with a confidential mediation in a document filed on the public docket demonstrates a brazen indifference to the most fundamental requirement of the District Court's ADR Plan. *See Spoth v. M/Y Sandi Beaches*, 09-cv-00647, 2010 WL 2710525, at \*6 (W.D.N.Y. July 7, 2010).

## PRELIMINARY STATEMENT

Defendants seek to introduce both testimony and documentary evidence regarding their purported offers to reinstate Plaintiff. In the first place, Mr. Sean D. Ronan, Esq.,[2] the M&T attorney who has represented Defendants throughout these proceedings and who will, ostensibly, continue to do so at trial, submitted a declaration describing the evidentiary basis for the offers and outlining the presumed subject-matter of such testimony:

1. A telephone conversation between Mr. Ronan and Plaintiff's counsel Ari Y. Graff, on or about October 12, 2012, to discuss the demand letter sent by Mr. Graff and explore the potential for a negotiated resolution to Plaintiff's claims (Ronan Decl. ¶¶ 4-5);

2. A reference to the alleged offer in Defendants' Position Statement to the Equal Employment Opportunity Commission ("EEOC"), and a subsequent "reiteration" of that offer to the EEOC investigator (Ronan Decl. ¶¶ 8-10);

3. Offers allegedly made during the mediation between the parties pursuant to the District's ADR Plan (Ronan Decl. ¶ 11).

Defendants also seek to introduce an email sent by Mr. Ronan to the mediator herself, Ms. Krista Gottlieb, Esq., on July 1, 2013, copying Mr. Graff and ostensibly "following up" on the offers made during mediation. (Defs.' Exhibit List, at D102).

---

[2] Although Mr. Ronan was initially included on Defendants' witness list (Defs.' Witness List ¶ 5 (ECF # 49)), Defendants confirmed by telephone on October 6, 2014 that they are withdrawing him as a witness. Defendants assert they have not otherwise changed their intention to introduce evidence of the October 2012 telephone conference, although they have not specified who can testify to the subject matter aside from Attorney Ronan.

In the first place, Defendants do not elaborate on their purported "reiteration" to the EEOC of their "willingness for [Plaintiff] to resume her duties from California." (Ronan Decl. ¶ 10). Presumably, the reference is to a letter sent by Mr. Ronan to Ms. Maureen C. Kielt, the EEOC investigator assigned to Plaintiff's claim, on February 27, 2013. (Vallas Decl. Ex. A). In that letter, Mr. Ronan responds to the Investigator's suggestion that Defendants' conditional offers of reinstatement undermine their position that the accommodation requested by Plaintiff was infeasible, stating that:

> Our decision to offer Ms. Sheng the accommodation she had demanded ***was not unlike any other offer of compromise*** M&T—and a myriad of other parties—may offer to avoid the vicissitudes of litigation. Distasteful and disruptive as it may have been, ***we ultimately decided to capitulate to Ms. Sheng's demand solely because we recognized that it would be better than incurring time and expense fighting the issue***. If you interpret our pragmatism as evidence of wrongdoing, we disagree.

(Vallas Decl. Ex. A, at 3 (emphasis added)). It is perhaps unsurprising that Defendants do not elaborate on this evidence, as the letter clearly demonstrates the disingenuousness of their contention that the offers were "unconditional" and in no way contingent upon a release of Plaintiff's claims. More to the point, however, as noted above, Defendants do not oppose Plaintiff's motion to exclude from trial any evidence or testimony related to the EEOC's investigation or findings. (Defs.' Mem. Opp. Mot. *in Limine* 2). This communication, like Defendants' Position Statement, is therefore also inadmissible on that basis alone.[3]

With respect to the other purported "offers," Plaintiff vigorously disputes Defendants' characterization of the October telephone conference and the negotiations at mediation—not

---

[3] Even were Defendants to oppose this aspect of Plaintiff's motion, such self-serving statements to the EEOC investigator would be inadmissible as hearsay pursuant to Fed. R. Evid. 802. Although Plaintiff could introduce such statements as a "party admission," she of course does not intend to do so. *See* Fed. R. Evid. 801(d)(2) (requiring that party admissions be "offered *against* an opposing party" (emphasis added)).

least because Plaintiff was not "employed" by Defendants in October 2012, as Defendants suggest, but had rather been terminated by no later than September 18, as evidenced by an email sent on that date to Ms. Sheng by Ms. Dhana Hannibal, an M&T Assistant Vice President. (*See* Vallas Decl. Ex. B). Indeed, the very fact that counsels' recollections of settlement negotiations are likely to be contested is precisely why such evidence must be excluded pursuant to Rule 408. *See Pierce*, 955 F. 2d at 828. Furthermore, as discussed more fully below, the introduction of any offers or other communications made in connection with mediation is absolutely prohibited by this District's ADR Plan. *See Spoth v. M/Y Sandi Beaches*, 09-cv-00647, 2010 WL 2710525, at *6 (W.D.N.Y. July 7, 2010).

## ARGUMENT

### I. The Testimony Of Attorney Ronan Regarding The October 2012 Settlement Discussion Must Be Excluded Pursuant to Rule 408

According to Rule 408, evidence of "conduct or statements made during compromise negotiations" are not admissible "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. It is well established that "evidence that demonstrates a failure of mitigation" in employment cases "goes to the 'amount' of the claim and thus, if . . . made in the course of compromise negotiations, . . . is barred under the plain language of Rule 408." *Pierce*, 955 F. 2d at 826-27. This general prohibition is not inconsistent with the Supreme Court's ruling that an employee's rejection of an unconditional offer of employment tolls the accrual of back pay and forecloses any claim for front pay in employment cases. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 229-30 (1982). The central question remains whether the offer was made in an attempt "to compromise" the employee's potential claim.

The Second Circuit has acknowledged that it may often be "difficult to determine whether an offer is made in compromising or attempting to compromise a claim" *Pierce*, 955 F.

4

2d at 827. Despite such difficulty at the margins, however, the Court squarely held that "where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408." *Id.* Thus, in *Pierce,* the Second Circuit held unequivocally that a purported offer of reinstatement made by the defendants' counsel in settlement negotiations with the plaintiff's counsel was inadmissible under Rule 408, and that the defendants' counsel was prohibited from attempting to testify or otherwise introduce any evidence of the same at trial. *Id.* at 829. This central holding of *Pierce* has been upheld numerous times over the past two decades. *See, e.g., Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*, 03-cv-4892 (JFB)(MLO), 2006 WL 2654827, at *9 (E.D.N.Y. Sept. 15, 2006); *Crigger v. Fahnestock & Co.*, 01-cv-781 (JFK), 2005 WL 857368; at *2 (S.D.N.Y. Apr. 14, 2005); *Payton v. Metro-N. Commuter R.R. Co.*, 93-cv-4840 (SAS), 1996 WL 325604, at *2 (S.D.N.Y. June 12, 1996).[4]

The Second Circuit's holding is premised primarily on a concern that the attorneys conducting settlement negotiations must not be called to testify regarding contested issues of fact. "It is common for attorneys in pending litigation to be involved in efforts to settle the case before trial actually commences," the Second Circuit explained, "It is also common that adverse parties have different memories as to what was said at such a meeting. If the substance of such negotiations were admissible at trial, many attorneys would be forced to testify as to the nature of the discussions and thus be disqualified as trial counsel." *Pierce*, 955 F. 2d at 828. This would of course lead to gamesmanship on the part of litigants, who might seek to introduce such evidence solely to deprive the other party of their chosen counsel. *See id.* ("Parties might well

---

[4] Significantly, the only two cases relied upon by Defendants in opposition to this motion – *Williams v. J.C. Penney Co.*, 86-cv-8497 (DNE), 1991 WL 150617 (S.D.N.Y. July 30, 1991) and *Thomas v. Resort Health Related Facility*, 539 F. Supp. 630, 637 (E.D.N.Y. 1982) – both predate *Pierce*, which has now been controlling authority in this Circuit for more than two decades.

attempt to use this ethical rule, like others, as a litigation tactic." (internal citations omitted)). As the Second Circuit held, "This undesirable result is largely avoided by excluding evidence of settlement negotiations." *Id.*

The evidence proffered by Defendants in this case fits squarely within the category of offers ruled inadmissible by the *Pierce* Court. Defendants never contacted Plaintiff, herself, directly with a job offer. *Cf. Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 904 (2d Cir. 1997) (admitting an unconditional offer when Plaintiff was offered the position by letter directly from the Vice President of Defendant "on the same terms and conditions as existed at the time of his termination and with no loss of service credit"). Instead, here, the purported offer was communicated to Plaintiff's counsel in response to a monetary demand and during a telephone conference initiated to explore the potential for a negotiated resolution to Plaintiff's claims. Subsequent offers were made to Plaintiff's counsel in the context of a Court-ordered mediation under this District's ADR plan. As such, all three of the elements the *Pierce* Court held give rise to a presumption that such offers are inadmissible—representation by counsel, a threat of litigation, and the initiation of administrative steps in that litigation—are present here. *Id.* at 826-27.

The wisdom of this rule is further underscored by the likelihood that, should Defendants prevail, the very "undesirable result" foreseen by the *Pierce* Court would in fact come to pass in this case. *Id.* at 828. As Defendants are no doubt aware, pursuant to the advocate-witness rule, any attorney for Defendants who testifies at trial about the October 2012 discussion will be disqualified from representing M&T. *See* N.Y. Code Prof'l Responsibility 3.7(a) (stating that, with limited exceptions, "A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact"). However, because

6

Plaintiff contests Mr. Ronan's characterization of the communications at issue, Mr. Graff would potentially be forced to testify, thus disqualifying him as well, together with—likely—the entire firm. *See Pierce*, 955 F. 2d at 828 (noting one interpretation of the advocate-witness rule that imputes a conflict to the entire firm). As a result, therefore, of Defendants' eve-of-trial gamesmanship, not only would the proceedings be inevitably delayed, but Plaintiff would be deprived of her chosen counsel, with whom she has developed a long-standing relationship.

This is the precise harm that animates the Second Circuit's longstanding exclusion of communications between counsel during settlement negotiations.[5] Accordingly, Plaintiff's motion to exclude any testimony or documentary evidence of conditional offers of reinstatement made in the context of Rule 408 settlement negotiations between counsel – including, without limitation, during a particular telephone conference between counsel in October 2012 – should be granted in all respects.

## II. Statements Made In Connection With Mediation Must Be Excluded Pursuant to Rule 408 And The ADR Plan

Defendants' attempts to introduce testimony and documentary evidence connected with the mediation of this matter deserve special mention. On January 1, 2013, the Court issued a Scheduling Order referring this case to mediation and providing counsel with a copy of the District's ADR Plan, pursuant to which the mediation would be conducted. (Scheduling Order, Jan. 1, 2013 (ECF #14) at ¶ 2). As set forth in the Plan:

---

[5] It should be noted that the District Court in *Pierce* imposed sanctions on defendant's counsel pursuant to Rule 11 for attempting to introduce the offers with based on arguments the District Court characterized as "absurd." *Pierce*, 955 F. 2d at 829. The Second Circuit reversed the imposition of sanctions because of a lack of "controlling authority" on the issue at that time. *Id.* Thereafter, however, *Pierce* itself, and its progeny, represent such controlling authority. Defendants' counsel here nevertheless inexplicably advances precisely the same arguments that *Pierce* conclusively rejected.

7

> **A. Confidential Treatment.** Mediation is confidential and private. No participant in the mediation process or any portion thereof may communicate confidential information acquired during mediation without the consent of the disclosing party. . .
>
> 1. All written and oral communications made in connection with or during the mediation session, any positions taken and any views of the merits of the case formed by any participant, including parties, counsel and the Mediator, are privileged and confidential.
>
> \* \* \*
>
> 3. No communication made in connection with or during any mediation session may be disclosed or used for any purpose including impeachment in any pending or future proceeding in the Court.

ADR Plan, § 5.10.[6]

Absolute confidentiality is essential to any functioning mediation program, a fact that has been emphasized repeatedly by courts throughout this Circuit. *See, e.g.*, *Calka v. Kucker Kraus & Bruh*, 167 F. 3d 144, 146 (2d Cir. 1999) (discussing the need to maintain confidentiality of settlement discussions in court settlement conferences because the disclosure of such communications "would have a chilling effect" on the parties, and finding that disclosure was "highly improper and will not be condoned"); *Spoth v. M/Y Sandi Beaches*, 09-cv-0647 (WMS)(LGF), 2010 WL 2710525, at *6 (W.D.N.Y. July 7, 2010) (sanctioning counsel pursuant to Section 2.3 of the District's ADR plan for revealing communications made in the context of mediation, as "[s]trict confidentiality regarding details of mediation discussions is the touchstone of any effective mediation program and Defendant's disregard reflects a near cavalier disregard for that important principle"; and noting that "[a] careful reading of the ADR Plan establishes that its confidentiality requirement provides for no exception in the case of direct communications to the court"); *see also Bernard v. Galen Grp., Inc.*, 901 F. Supp. 778, 783 (S.D.N.Y. 1995) (sanctioning counsel who disclosed to the court confidential mediation

---

[6] None of the Plan's limited exceptions to this general prohibition are applicable here. *See* ADR Plan, at § 5.10(4).

statements, including the specific dollar amounts of offers, even though the disclosures were not made in "bad faith," because "[p]articipants in the Mediation Program rely on the understanding that all matters discussed during the mediation process will be kept confidential, and the breach of the applicable confidentiality provisions threatens the integrity of the entire Program").

Notwithstanding this well-established rule, Defendants have in fact *already* violated the ADR Plan's mandate by disclosing details of the mediation to the Court and to the public in the Declaration submitted in opposition to the instant motion. (*See* Ronan Decl. ¶ 11 ("In a mediation between the parties in May 2013, I presented several options of employment, including the position [Plaintiff] had vacated in October 2012. I advised [Plaintiff's] counsel that these options were . . . unconditional")). In blatant contravention not only of Rule 408 but also of the District's ADR Plan, Defendants now seek to aggravate this violation by introducing at trial further evidence directly connected to the mediation; specifically, testimony regarding certain offers purportedly made by Defendants in the course of that mediation (Ronan Decl. ¶ 11), and an email following up on the mediation, sent by Attorney Ronan to the mediator herself. (Defs.' Exhibit List, at D102). Amazingly, in seeking to introduce this evidence, Defendants do not even reference, much less attempt to distinguish, the confidentiality requirement of the District's ADR Plan, despite its centrality to any effective mediation program.

Significantly, the introduction of such evidence would involve not only the testimony of all counsel involved—which, as discussed above, is precisely the harm the *Pierce* line of cases are designed to prevent—but would also require that the mediator herself be subpoenaed to testify and produce records related to the mediation. Such a procedure would directly contravene the rule set forth by the Second Circuit for disclosure of confidential mediation information. *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011). ("A party seeking disclosure of confidential

9

mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality."). Defendants have not attempted to satisfy any one of the Second Circuit's three prongs, and would be unable to do so.

It is therefore essential that the Court prevent any further improper—indeed unlawful—disclosures by granting Plaintiff's motion to exclude such evidence from trial in its entirety.

## CONCLUSION

Based upon the foregoing, Plaintiff Jia Sheng respectfully requests that this Court grant her motion *in limine* in its entirety, and grant such other and further relief as it may deem just and proper.

Dated: October 6, 2014
      New York, New York

Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

By: _____
    George D. Vallas
    Ariel Y. Graff

401 Park Avenue South
New York, New York 10016
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
george@ottingerlaw.com
ari@ottingerlaw.com

*Counsel for Plaintiff*