UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Jia Sheng,

                                    Plaintiff,

                                                                        **Hon. Hugh B. Scott**


                                                                        12CV1103[1]

                        v.                                              **Order**



M&T Bank Corporation et al.,

                                    Defendant.
_____

        Before the Court is the plaintiff's motion in limine (Docket No. 44).


                                    **Background**

        The plaintiff, Jia Sheng ("Sheng"), brings this action claiming that M&T Bank

Corporation ("M&T")[2] violated her rights under the Family Medical Leave Act, 29 U.S.C.

§2601 et seq, ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq.

("Title VII"), the Americans with Disability Act of 1990, 42 us §12101 et seq. ("ADA"), the

California Family Rights Act, Cal. Gov. Code §12945.2 ("CFRA"), the California Pregnancy

Disability Leave Law, Cal. Gov. Code §12945(a) ("PDLL"), the New York State Human Rights

_____

    [1]   The parties have consented to the jurisdiction of the Magistrate Judge (Docket No. 39).

    [2]   The named defendants are "M&T Bank Corporation, and Manufacturers & Traders
Trust Company d/b/a M&T Bank."  The defendants are referred to collectively herein as "M&T"
or "the Bank."

                                    1

Law, N.Y. Executive Law §290 et seq. ("NYSHRL"), and the Califorina Fair Employment and

Housing Act, Cal. Gov. Code §12940 et seq. ("FEHA"). (Docket No. 21).

Sheng currently resides in California. In January of 2010, the plaintiff was employed by

M&T in Buffalo, New York as a Quality Control Team Lead. In March of 2011, she had decided

to resign her position with M&T to relocate to California where because her husband had

obtained a job there.  According to Sheng, her supervisor, Monica Holcomb, convinced her not to

resign, but instead to work remotely from California. (Docket No. 21 at ¶¶13-16).  Sheng agreed

to the remote work arrangement. In May of 2012, Sheng advised M&T that she was pregnant.

(Docket No. 21 at ¶ 18).  The plaintiff claims that shortly thereafter she was asked to resubmit

documentation relating to her remote work arrangement (referred to as an "alternative work

arrangement" or "AWA").  Subsequently, on June 28, 2012, she was advised that M&T had

modified its AWA policy and that she would be required to be physically present in Buffalo at

least two days per week. (Docket No. 21 at ¶¶ 19-21).  Sheng sought to get M&T to agree to

except her from the new requirement and provided M&T with a letter from her obstetrician

stating that she was not to fly during the remainder of her pregnancy. (Docket No. 21 at ¶¶23-27).

The plaintiff contends that M&T refused to make any accommodation, and on September 11,

2012, revoked her authorization to work remotely from California and demanded that she

permanently relocate to Buffalo. (Docket No. 21 at ¶ 29).  Sheng states that because she could

not agree to relocate to Buffalo, M&T terminated her effective October 12, 2012. (Docket No. 21

at ¶¶ 30-31).

The defendants assert that the Bank's Central Technology ("CT") department, in which

Sheng was employed, underwent a significant reorganization in early 2012. Pursuant to that

reorganization, on June 27, 2012 the Bank advised Sheng that all employees at Grade 12 and above (which included the plaintiff) would have to be physically present in Buffalo at least two days per week.  M&T contends that the Bank also advised Sheng that they would pay for Sheng's travel and lodging costs for the trips to Buffalo.  According to the defendants, after Sheng submitted a complaint to the Bank through an attorney, M&T offered to allow the plaintiff to continue to work remotely in California (not on the new initiative she had been working, but on other work the Bank believed could be accomplished remotely) for the remainder of her pregnancy and that her AWA arrangement would be revisited upon her return to work after any pregnancy break. (Docket No. 47 at pages 2-3).  The Bank argues that this offer was not conditioned upon the plaintiff signing any release or waiver. (Docket No. 47 at page 5).[3]

**Motion in Limine**

The plaintiff has filed a motion in limine seeking to preclude the defendants from introducing evidence that M&T made a verbal offer to the plaintiff on October 12, 2012, to reinstate her employment and her remote AWA for the remainder of her pregnancy, contingent upon the signing of a release and waiver of any claims against M&T.  (Docket No. 46 at ¶ 4). The plaintiff asserts that the Bank made similar offers to the plaintiff during the proceedings before the Equal Employment Opportunity Commission ("EEOC") and during the mediation sessions relating to this litigation. The plaintiff states that she rejected each of the offers.

---

[3]   M&T states that as an alternative, the Bank also offered Sheng a severance package. The severance package, if the plaintiff chose to accept it, would have required her to sign a release and waiver of claims. (Docket No. 47 at page 5).

(Docket No. 46 at ¶¶5-8).  Sheng argues that these offers should be precluded as offers to compromise under Rule 408 of the Federal Rules of Evidence.  (Docket No. 45 at page 3).

Generally, Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The Bank contends that its offer to reinstate the plaintiff was unconditional and that this offer is admissible as relating to "another purpose" under Rule 408 – that is the tolling of damages for back pay.  (Docket No. 47 at pages 4-5).  In <u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219 (1982), the Supreme Court held that when an employer makes an unconditional offer to reinstate an employee terminated as a result of discrimination, the employee's rejection of that offer forecloses any claim for future front pay and tolls the continuing accrual of back-pay liability under Title VII of the Civil Rights Act of 1964. Back pay is tolled as of the date of the employee's rejection.  If an unconditional offer for reinstatement tolls damages, evidence of that unconditional offer must be admissible.  The Second Circuit rejected the argument that such

evidence was barred under Rule 408, stating that "[b]y definition, an unconditional offer may not require the employee to abandon or modify [her] suit, and no such request was made by defendants. The offer therefore cannot be considered an offer of settlement or compromise." Lightfoot v. Union Carbide Corp., 110 F.3d 898 (2d. Cir. 1997).

In light of the Supreme Court's ruling in Ford Motor and the Second Circuit's holding in Lightfoot, the motion in limine to preclude introduction of such evidence is denied without prejudice.  A question of fact exists as to the unconditional nature of the reinstatement offer. Further, the circumstances relating to the Bank's offer of reinstatement are not fully present in the record. The plaintiff characterizes the offer as being "verbal" by the Bank's "legal counsel" but does not otherwise identify who extended the offer on behalf of the Bank.  The defendant's pretrial submissions list at least two witnesses who intend to offer testimonial evidence relating to the unconditional offers of reinstatement, Sean Ronan and Martha D'Arcangelo (Docket No. 49 at page 3).  Ronan is currently designated as the defendants' counsel in this case.  To the extent that Ronan intends to proceed as both counsel and witness, the advocate-witness rule is implicated.   "It is well established that once representation is undertaken, a lawyer must withdraw as advocate if it appears that he must testify on behalf of his own client." Ramchair v. Conway, 601 F.3d 66 (2d. Cir. 2010) quoting People v. Rivera, 172 A.D.2d 633, 568 N.Y.S.2d 435 (2d Dep't 1991); see also People v. Paperno, 54 N.Y.2d 294, 299-300, 445 N.Y.S.2d 119, 429 N.E.2d 797, 800 (1981) ("The advocate-witness rule ... generally requires the lawyer to withdraw from employment when it appears that he ... will be called to testify regarding a disputed issue of fact.") (internal citations omitted). The rule is now codified in Rule 3.7(a) of the New York Rules of Professional Conduct.

The parties shall be prepared to address this issue at the pretrial conference on October 14, 2014.

**Motion Requesting Judicial Notice of Form 10-K**

The plaintiff has filed a motion seeking the Court to take judicial notice of the financial information included in  M&T's Form 10-K filings with the Securities and Exchange Commission ("SEC") for the years 2010, 2011 and 2012. (Docket No. 53).  The defendants shall respond to the motion on or before October 17, 2014.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
October 9, 2014