UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIA SHENG,

                              Plaintiff,

v.                                                      No. 12 Civ. 01103 (HBS)


M&T BANK CORPORATION, and
MANUFACTURERS & TRADERS TRUST
COMPANY, d/b/a M&T BANK,

                              Defendants.

---


DEFENDANTS' MEMORANDUM OF LAW
PURSUANT TO THE COURT'S AMENDED ORDER
DATED OCTOBER 14, 2014

## INTRODUCTION

Defendants, M&T Bank Corporation and Manufacturers & Traders Trust Company, d/b/a M&T Bank (collectively "M&T" or the "Bank"), respectfully submit this memorandum of law pursuant to the Amended Order of Hon. Hugh B. Scott, dated October 14, 2014 (Dkt. # 68) ("Amended Order"). In the Amended Order, this Court directed that Defendants identify (1) "by date, each instance in which the defendants claim that an unconditional offer of reinstatement was presented to the plaintiff;" (2) "the facts and circumstances . . . as to each such instance;" and (3) "how they intend to introduce competent evidence of the unconditional nature of the verbal offer of reinstatement absent testimony from Ronan."

As set forth in this memorandum, Defendants submit that multiple unconditional offers of employment were conveyed to Plaintiff and that such offers are admissible at trial.

### A.  Defendants' Unconditional Offers to Plaintiff

#### 1.  October 2012

Plaintiff's counsel issued an initial written complaint to Defendants by letter dated September 20, 2012. Thereafter, on or about October 12, 2012, a conference call was scheduled between Plaintiff's counsel, Ari Graff, and Defendants' counsel, Sean Ronan. On that call, Mr. Ronan advised Mr. Graff that Plaintiff could resume her job duties – remotely, from California – for the remainder of her pregnancy and that, upon her return from any maternity leave, the status of her alternative work arrangement (or "AWA") would be evaluated at that time. No requirement was issued, expressly or implicitly, that the offer to resume her job duties was conditioned upon the execution of a release or any other act by Plaintiff. That offer was later declined.

2

The unconditional nature of the October 2012 offer is evident from the circumstances at the time it was presented. Indeed, when the offer was provided, Plaintiff *was still an employee* of M&T. The sequencing of these two critical events – Defendants' offer and the subsequent end of her employment – is critical to the unconditional nature of the job offer proposal that was presented: because Plaintiff was still an employee, there would have been no reason for Defendants to impose or expect the condition that she execute a release to continue in her position. There had been no change in her status as an employee for which a release would even have been considered or needed. Plaintiff clearly recognizes this problem, as demonstrated by her recent attempts to avoid it by "re-arranging" settled facts in this case (addressed in **Section B** below).

## 2. May 2013

Following the commencement of this action, the parties participated in a scheduled mediation conference before Krista Gottlieb on May 17, 2013 at Ms. Gottlieb's law offices in Buffalo, NY.[1] Defendants' representatives were Mr. Ronan and Martha D'Arcangelo, a Vice President in the Bank's Human Resources department; Mr. Graff was also in attendance, and Plaintiff appeared via videoconference. At that mediation session, Defendants offered (separate from any discussions on the possibility of settling the instant action) various employment

---

[1] Defendants are, of course, mindful of this District's Alternative Dispute Resolution Plan and would never knowingly disregard the Plan's restrictions on the disclosure of communications "during or in connection with" a mediation session. M&T does not intend to introduce evidence of the May 2013 offer at trial. However, inasmuch as this Court has ordered Defendants to identify in this memorandum "**each instance** in which the defendants claim that an unconditional offer of reinstatement was presented to the plaintiff" (emphasis added), that unconditional offer is discussed here. Lest Plaintiff take umbrage at our reference to that unconditional offer here in any event, it is important to note that it was Plaintiff who first disclosed discussions at the mediation session in the original Motion in Limine (Dkt. No. 45, at Page 5 of 12), and incorrectly characterized M&T's offer at that time as "conditional" as a basis to seek its exclusion from evidence. Plaintiff cannot use her own characterization of an offer as a basis to have it excluded, and then use the ADR Plan as a shield to suggest Defendants are unable to dispute the accuracy of her characterization.

positions with the Bank, without any condition that Plaintiff execute a release. Those offers were declined.

### 3. July 2013

On July 1, 2013, Mr. Ronan contacted Mr. Graff by e-mail to inquire whether Plaintiff was interested in any of the unconditional offers of reinstatement that had been extended; these included the previous job title she had held (with the option to report to a different manager, if she so desired) as well as other positions in the Central Technology department that were commensurate with her skills. The offers of employment referenced in that e-mail (attached as Exhibit A) were expressly provided as unconditional.[2] Those offers were also declined.

### B. Criteria for Admissibility

The circumstances present here convincingly establish that neither the October 2012 nor the July 2013 offers were an attempt to compromise the claim. First, with regard to the October 2012 offer, there was no claim at the time the offer was presented for which the Bank would have sought a release. Critically, Plaintiff is so aware of the significance of this timing that her recent papers in support of the Motion in Limine try to re-arrange the sequence of events to conceal the unconditional nature of the offer. In particular, Plaintiff's reply on the Motion in Limine denies the unconditional nature of the October 2012 job offer in large part on the basis that Plaintiff "had been terminated by no later than September 18." (Dkt. No. 62, at Page 4 of 10.)

---

[2] Although that e-mail was also sent to Ms. Gottlieb to keep her apprised of the parties' discussions, an offer that was communicated six weeks after the mediation date is obviously not made "during . . . a mediation session" nor, given the expressly unconditional nature of the job offer referenced in the email, could it be construed as having been "in connection with" the mediation either – and thus not covered by the ADR Plan. Defendants had not previously disclosed that document to the Court in the submission of their proposed exhibits, as a show of good faith in light of the issues pending in Plaintiff's Motion in Limine, but do so now only in light of this Court's October 14, 2014 order to specify each instance an unconditional offer was made.

The use of the September 18 date as the end of her employment is demonstrably false. Plaintiff's own complaint acknowledges her employment ended nearly a full month later. In that pleading, Plaintiff alleges that, if she declined the Bank's severance package of nearly three months' pay (which she did), her employment would end on October 12, 2012 (Amended Complaint, Dkt. No., Par. 30). She similarly admits to the October 2012 date as the end of her employment again in her deposition (Deposition of J. Sheng, at p. 127, attached as Exhibit B).

This abrupt change in Plaintiff's characterization of the facts begs an obvious question: Why would Plaintiff now try to re-cast the end of her employment to be prior to October 2012? There has never been any dispute, until now, that the end of Plaintiff's employment occurred in October 2012. This "about face" only be attributed to the fact that Plaintiff recognizes the circumstances of that offer fully warrant having it be admitted into evidence. By brazenly contradicting her own pleadings to this Court – and her own sworn deposition testimony – regarding the date of her last day of employment, Plaintiff acknowledges the importance (as Pierce outlines) of "the timing of the offer and the existence of a disputed claim," and how those circumstances here demonstrate the offer was unconditional.

Under these circumstances, evidence of these unconditional offers is admissible under Rule 408 and case law, and is distinguishable from the result in *Pierce v. F. R. Tripler*, 955 F.2d 820 (2nd Cir. 1992). In *Pierce*, the defendant employer made an application to the district court to have certain evidence of a job offer it had extended to the plaintiff introduced at trial. That application was denied on the grounds that it was not "unambiguously unconditional," and the defendant contended that the ruling constituted reversible error. 955 F.2d at 826. In upholding the trial court's ruling, the Second Circuit relied instead upon the language in Rule 408. In its analysis, the court noted that "[e]vidence that demonstrates a failure to mitigate damages goes to

the "amount" of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408." *Id.* at 826 – 827. (emphasis added).

The Second Circuit acknowledged that "[i]t is often difficult to determine whether an offer is made 'in compromising or attempting to compromise a claim'" and that "the timing of the offer and the existence of a disputed claim are relevant to the determination." *Id.* at 827 (citations omitted). As noted in the submissions by Plaintiff's counsel, *Pierce* articulates the issue as follows:

> [W]here a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408.

*Id.* On its face, that standard does not establish an absolute prohibition, but rather a rebuttable presumption. This is evidenced by the very next sentence in the Court's decision: "The party seeking admission of an offer under those circumstances must demonstrate convincingly that the offer was not an attempt to compromise the claim." *Id.*

The evidence in this case of the unconditional job offer from October 2012 is fully admissible under *Pierce*. As a threshold matter, the circumstances here do not even trigger the rebuttable presumption in *Pierce* that the offer was made "within the scope of Rule 408." First, Plaintiff was still an employee of M&T at the time the offer was extended, and no ripe legal claim could possibly be said to have even existed for which a release to be considered, Second, at the time of the offer, Plaintiff had not initiated any "administrative steps" to engage in litigation. Indeed, Plaintiff's Charge was not filed with the EEOC until November 28, 2012, six weeks after the unconditional offer was made.

In the reply papers on the Motion in Limine, Plaintiff attempts to dispute the unconditional nature of the October 2012 offer by relying upon Defendants' submissions in response to her EEOC Charge. Plaintiff points to references by Defendants that the October 2012 offer was made in an effort to "resolve" the claim and that the offer may "stave off the vicissitudes of litigation." Plaintiff's reliance on these quotes is misguided. This language from M&T's submissions to the EEOC reflect Defendants' anticipation that the October 2012 offer would avoid needless litigation by extinguishing any possible concerns before it ripened into actual legal claim (again, Plaintiff was still an employee at the time). These statements do not, however, show or even suggest that Defendants conditioned the offer upon a <u>release</u>. Thus, these facts already overcome the rebuttable presumption in *Pierce,* the circumstances make clear (despite Plaintiff's new efforts to distract from them) that the offer was unconditional, and the October 2012 unconditional offer is fully admissible.

Moreover, the July 2013 unconditional offer is also admissible. While the elements necessary to create a rebuttable presumption may be present with regard to that particular communication, the e-mail itself expressly and indisputably identifies the job offers referenced in that document were being made without any conditions. As such, the clear communication that the offers with unconditional removes any dispute as to the nature of the offer and thereby, unlike in *Pierce,* "demonstrate[s] convincingly that the offer was not an attempt to compromise the claim."

## C.  <u>Evidentiary Issues</u>

### 1.  October 2012 Offer

Defendants intend to introduce evidence of the verbal, unconditional offer of employment through the testimony of Martha D'Arcangelo and of Plaintiff herself. Ms. D'Arcangelo, as a

Vice President in the Human Resources Department, can testify (1) that she was aware of the concerns expressed by Plaintiff with regard to the assessment of her request for an accommodation; (2) that she was aware of the fact that Plaintiff was still an employee at the time the concerns were raised; (3) that she participated in discussions with her peers in the Human Resources department to discuss Plaintiff's employment; (4) that she was aware of Plaintiff's request for an accommodation; (5) that a determination was reached to permit Plaintiff to continue working remotely from California for the duration of her pregnancy; (6) that she approved an offer be extended to Plaintiff to continue working remotely; (7) that Plaintiff was still an employee at the time the offer was considered and that there was no need or expectation that Plaintiff execute any type of release in exchange for that offer; and (8) that, in light of Plaintiff's representation by counsel, the Bank's attorney extended that offer to Plaintiff's counsel.

In addition, Defendants can establish that Plaintiff was aware of this offer through examination of Plaintiff at trial. As she testified in her deposition, Plaintiff was aware that Defendants had offered to allow her to continue her employment. Although she attempts to explain it away as "chatter" in her testimony, her testimony clearly establishes that the offer had been presented and that she was aware of it:

> Q. Ms. Sheng, prior to the end of your employment with M&T, were you aware that the bank was offering to you to allow you to continue your position from California?
>
> MR. GRAFF: Objection.
>
> THE WITNESS: I never see it in email or any direct phone call from human resource at all.
>
> BY MR. RONAN:
> Q. Were you aware of -- were you aware of that offer?

A. I heard it from my attorney there was some discussion, but I was expecting a firm communication in written, but I never seen it.

Q. Are you -- are you saying that's the basis by which -- strike that. Did you decline such an offer?

MR. GRAFF: Objection.

THE WITNESS: It was never an offer written to me. So there was no such a thing rejecting something not formally presented to me.

BY MR. RONAN:

Q. **Are you saying you are not aware of such an offer?**

A. **I was aware.**

(Sheng Deposition, at p. 165-166 [emphasis added], attached as Exhibit C). With Plaintiff's sworn testimony that she was aware that an offer to continue her job duties remotely from California had been presented in October 2012 while she was still an employee, and with the testimony from Ms. D'Arcangelo as Defendants' witness to corroborate that offer and testify to the fact that the offer was unconditional, the evidence of the October 2012 unconditional offer should be fully admissible at trial.

## 2. July 2013 Offer

Defendants intend to introduce evidence of the unconditional offer from July 2013 as a business record. Defendants have identified as a witness John Walp, an Administrative Vice President of M&T and the Bank's Chief Information Security Officer. He will testify (1) that, as part of his job duties for Defendants, he is responsible for overseeing the operation and maintenance of the Bank's information security systems; (2) that a portion of his responsibilities include overseeing the operation of the Bank's e-mail systems and the storage and retention of those emails; (3) that he oversees the implementation of "holds" on emails as is determined to be

9

appropriate in the event of litigation or other events; (4) that he is aware that Defendants' counsel in this matter, Sean Ronan, is and has been subject to a litigation hold as it relates to his duties as counsel for the Bank; (5) that an e-mail issued from the account of Mr. Ronan was sent on July 1, 2013 to the email address of ari@ottingerlaw.com; and (6) that the Bank's email system reflects the email was successfully delivered to that address.

Ms. D'Arcangelo, as noted above, can further testify that the expressly unconditional offer set forth in the July 2, 2013 email is entirely consistent with her understanding and instruction as to the nature of the offer to extend to Plaintiff. As noted above, this offer is also admissible under Rule 408.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the proposed evidence of unconditional employment offers extended for the Plaintiff be permitted into evidence at the trial of this matter scheduled to begin on November 3, 2014.

Dated: October 17, 2014
      Buffalo, New York

 

**M&T BANK**
Sean D. Ronan, Esq.
Thomas K. Frederick, Esq.
*Attorneys for Defendants*

By: _/s/ Sean D. Ronan_
    Sean D. Ronan

One M&T Plaza
Buffalo, New York 14203
Telephone: (716) 842-5401
sronan@mtb.com
tfrederick@mtb.com

**EXHIBIT A**

| | |
|---|---|
| **From:** | Ronan, Sean |
| **Sent:** | Monday, July 01, 2013 11:56 AM |
| **To:** | gottlieb@mdg-law.com |
| **Cc:** | ari@ottingerlaw.com |
| **Subject:** | Sheng |

Ms. Gottlieb:

Thank you for your call today. As we discussed, our business line has advised me that they need to move forward with filling the team leader position (previously offered, without condition, to Ms. Sheng). The other positions we discussed are still available (also offered without condition), but the team lead role needs to be filled soon.

Ari, please advise at your earliest convenience whether your client remains interested in this position. If you have any questions about it, please let me know.

Thank you,

Sean D. Ronan
Vice President | M&T Bank
Legal Department | Senior Counsel
One M&T Plaza, Buffalo, NY 14203
Direct Phone 716 842 5401 | (F) 716 842 5376
sronan@mtb.com | mtb.com

**EXHIBIT B**

1    focus in that meeting.

2         So I was completely shocked.  I didn't

3    provide any answer directly in that meeting.

4    I just expressed my surprise and

5    disappointment to everyone.

6  Q. Ms. Sheng, did there come a point in time

7    where your employment with M&T ultimately came

8    to an end?

9  A. According to the termination document it was

10   ended in mid October.

11 Q. And prior to that date, do you recall having

12   your counsel contact the bank on your behalf

13   regarding your employment status?

14 A. Yes, yes.

15 Q. And were you aware in the context of -- or in

16   response to that inquiry from your attorney,

17   that the bank advised through your counsel

18   that you could resume your active job duties?

19        MR. GRAFF:  Objection.  Don't answer

20   that.

21        MR. RONAN:  Are you directing her not to

22   answer?

23        MR. GRAFF:  I'm directing her not to

# EXHIBIT C

1    A. No.

2    Q. Ms. Sheng, prior to the end of your employment

3       with M&T, were you aware that the bank was

4       offering to you to allow you to continue your

5       position from California?

6            MR. GRAFF:  Objection.

7            THE WITNESS:  I never see it in email or

8       any direct phone call from human resource at

9       all.

10   BY MR. RONAN:

11   Q. Were you aware of -- were you aware of that

12      offer?

13   A. I heard it from my attorney there was some

14      discussion, but I was expecting a firm

15      communication in written, but I never seen it.

16   Q. Are you -- are you saying that's the basis by

17      which -- strike that.

18           Did you decline such an offer?

19           MR. GRAFF:  Objection.

20           THE WITNESS:  It was never an offer

21      written to me.  So there was no such a thing

22      rejecting something not formally presented to

23      me.

1     BY MR. RONAN:

2     Q. Are you saying you are not aware of such an

3        offer?

4     A. I was aware.  I heard some chatting from my

5        attorney, but that stays as chatting.

6     Q. Ms. Sheng, is part of your claim against M&T

7        that you have suffered any type of medical

8        condition of any kind as a result of what

9        you've alleged in the complaint against M&T?

10    A. In record --

11    Q. I'm sorry --

12    A. In record?  I mean, in the medical record?

13    Q. I'm just asking --

14    A. No.  I experienced headache, I experience a

15       lot of stress.  That's not on my medical

16       record though.

17    Q. Did you --

18    A. I mentioned to my doctor when I consulted with

19       him during that period of time, and I -- it

20       was just regular physical exam for my

21       pregnancy when I was sitting with my doctor.

22          I talk with him about the stress I

23       experienced, and he just provided some