UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JIA SHENG,

                      Plaintiff,

                  v.

M&T BANK CORPORATION, and
MANUFACTURERS & TRADERS TRUST
COMPANY, d/b/a M&T BANK,

                      Defendants.

No. 12 Civ. 01103 (HBS)

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE AT TRIAL

THE OTTINGER FIRM, P.C.
401 Park Avenue South
New York, New York 10016
Telephone: (212) 571-2000
Facsimile: (212) 571-0505

*Counsel for Plaintiff*

## TABLE OF CONTENTS

Factual Background ........................................................................................................... 1

    I.   The October 2012 Offer ................................................................................. 2

    II.  The Offer Made In Connection With Mediation ............................................ 4

Argument ......................................................................................................................... 5

    I.   The October 2012 Offer Must Be Excluded Under Rule 408 ............................. 5

        1.  The October Offer Occurred During A Settlement Negotiation ..................... 6

        2.  The Offer Is Inadmissible Under Rule 408 Regardless Of Whether There Was Explicit Discussion Of A Release ................................................. 9

    II.  The Offers Made In Connection With Mediation Must Be Excluded Under Rule 408 And The District's ADR Plan ............................................... 11

    III. Evidence Of The Offers Must Be Excluded Pursuant To Rule 802 As Hearsay ............. 12

CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

*Cases*

*Ford Motor Co. v. EEOC*,
    458 U.S. 219 (1982) ................................................................................................... 6

*Calka v. Kucker Kraus & Bruh*,
    167 F. 3d 144 (2d Cir. 1999) ..................................................................................... 11

*Carreras v. Sajo, Garcia & Partners*,
    596 F. 3d 25 (1st Cir. 2010) .....................................................................................7-8

*Goonan v. Fed. Reserve Bank of N.Y.*,
    12-cv-3859, 2014 WL 3610990 (S.D.N.Y. July 22, 2014) ........................................... 7

*Lightfoot v. Union Carbide Corp.*,
    110 F. 3d 898 (2d Cir. 1997) ..................................................................................... 10

*Pierce v. F.R. Tripler & Co.*,
    955 F. 2d 820 (2d Cir. 1992) ...............................................................................*passim*

*Spoth v. M/Y Sandi Beaches*,
    09-cv-00647, 2010 WL 2710525 (W.D.N.Y. July 7, 2010) ................................5, 11-12

*Weixel v. Board of Educ. of City of N.Y.*,
    287 F. 3d 138 (2d Cir. 2002) ....................................................................................7-8

*Other Authorities*

Fed. R. Evid. 403 ................................................................................................................ 12

Fed. R. Evid. 408 ........................................................................................................*passim*

Fed. R. Evid. 802 ........................................................................................................... 5, 12

N.Y. Code Prof'l Responsibility 1.6 ................................................................................ 5, 13

N.Y. Code Prof'l Responsibility 3.7(a) ................................................................................ 6

Western District of New York ADR Plan § 5.10(A)(3) ................................................1, 4, 5, 11

Pursuant to this Court's Amended Order, dated October 14, 2014 (ECF # No. 68) Plaintiff respectfully submits this Memorandum of Law in further support of its Motion *in limine* for an Order excluding from trial, *inter alia*,[1] any evidence regarding offers of reinstatement made in the context of settlement negotiations by Defendants M&T Bank Corporation and Manufacturers and Traders Trust Company d/b/a M&T Bank (collectively "Defendants" or "M&T"). As further developed below, the offers must not only be excluded under Federal Rule of Evidence 408 and the ADR Plan of the Western District of New York (the "ADR Plan"), but also, in light of Defendants' pretrial submissions, must be excluded under Rule 802 as inadmissible hearsay.

## FACTUAL BACKGROUND

Although the parties vigorously contest the nature of the offers, there is no dispute about the circumstances under which they were made. Indeed, the facts are set forth in the Declaration of Sean D. Ronan in Opposition to Plaintiff's Motion *in Limine* (ECF # 47-1), and further developed in Defendants' pretrial submissions and during argument at the November 14, 2014 Pretrial Conference (the "Argument"). There are, specifically, two offers at issue: an offer made during a telephone conversation on or about October 12, 2012 between Attorney Ronan, counsel for Defendants, and Ariel Y. Graff, counsel for Plaintiff (Ronan Decl. ¶ 4); and an offer made during the mandatory mediation between the parties held pursuant to the District's ADR Plan before Ms. Krista Gottlieb in May 2013 (Ronan Decl. ¶ 11).

---

[1] As noted in the initial moving papers, Defendants do not contest the exclusion of evidence related to the investigation or findings of the EEOC. (Defs.' Mem. Opp. Mot. *in Limine* 2 (ECF # 47)).

Defendants have never alleged that any offer was made prior to Defendants' receipt of the demand letter sent by Plaintiff's counsel in September 2012, or that any offer was conveyed directly to Plaintiff by any representative of M&T. Plaintiff herself testified at her deposition to the fact that she was never offered a position directly by Defendants:

> Q: Were you aware that the bank was offering to allow you to continue your position from California?
>
> A: I never see it in email [sic] or any direct phone call from human resources at all
>
> * * *
>
> Q: Are you saying you are not aware of such an offer?
>
> A: I was aware. I heard some chatting from my attorney, but that stays as chatting.

(*See* Vallas Decl. in Further Supp. Pl.'s Mtn i*n Limine* (Oct. 17, 2014) (hereinafter "Vallas Decl. II"), at Ex. B at 165:23-23 to 166:1-5).

I.  **The October 2012 Offer**

On or around June 28, 2012, approximately three weeks after Ms. Sheng informed M&T that she was pregnant, Ms. Sheng was notified that her AWA, pursuant to which she had worked remotely from California for over a year, was being revoked, and that she would be required to report to Buffalo for at least two days a week. (*See* Pl.'s Trial Mem. (ECF # 55) 1-2). After Ms. Sheng provided a note from her physician that she would be unable to travel during her pregnancy, M&T reiterated the requirement and informed Ms. Sheng by letter, dated September 11, 2012, that her "position was being eliminated" and that she would be placed on "non-working notice" from September 15, 2012 until her termination date of October 12, 2012. (*See* Vallas Decl. II at Ex. C). The letter also enclosed a severance agreement, pursuant to which Ms. Sheng was offered a severance payment in exchange for a release of claims. (*See id.*). This

decision was reiterated in an email to Ms. Sheng on September 18, 2012 from Ms. Dhana Hannibal, a Human Resources representative at Defendants. (*See* Vallas Decl. Supp. Mot. *in Limine* ("Vallas Decl. I"), Oct. 6, 2014 (ECF # 63) at Ex. B ("This is to confirm our acceptance of your emailed declination to continue employment with M&T Bank.")).

Distressed at this apparent violation of her rights, Ms. Sheng retained the undersigned firm, and Ariel Y. Graff accordingly sent a letter to Defendants on September 20, 2012, stating his opinion that the revocation of Ms. Sheng's AWA and her subsequent termination was unlawful, and informing Defendants of Ms. Sheng's intention to initiate litigation. (*See* Ronan Decl. Ex. A (noting on the header of each page that the letter was a "Confidential Communication For Settlement Purposes Only"). In response to this correspondence, Attorney Sean Ronan and Attorney Graff scheduled a telephone conference for October 12, 2012 to discuss a potential resolution of Ms. Sheng's claims. (*See* Decl. Ariel Graff Supp. Pl.'s Mot. *in Limine* ("Graff Decl."), Sept. 15, 2014, at ¶ 4; *see also* Ronan Decl. ¶ 4). During that conversation, Attorney Ronan rejected Attorney Graff's monetary demand but offered to reinstate Ms. Sheng instead. (*See* Graff Dec. ¶ 4; Ronan Decl. ¶ 4).

Only Attorney Graff and Attorney Ronan were present on the call, and there was no contemporaneous writing memorializing it content. It is therefore difficult to determine precisely what evidence Defendants intend to introduce regarding the October offer. Although Attorney Ronan was initially included on Defendants' Witness List, Defendants have since filed an addendum removing him from the list. (Defs.' Am. To Witness List (ECF # 60)). Attorney Ronan reiterated at the Argument that he does not intend to testify. (*See* Vallas Decl. Ex. A, at 2:20-25 to 3:1-2; 8:24-25 to 9:1). Defendants have also included Ms. Martha D'Arcangelo, Vice President and Employee Relations Legal Services Manager at Defendants, on their Witness List

3

to testify about the "unconditional nature of the offers of employment extended to Plaintiff." (Defs.' Witness List (ECF # 49). As Ms. D'Arcangelo was not on the call, however, any testimony from her regarding the October offer would undoubtedly be inadmissible as hearsay. Moreover, because the offer was not conveyed directly to Plaintiff, but rather to Plaintiff's counsel, any testimony from Ms. Sheng herself would be protected by attorney-client privilege.

## II. The Offer Made In Connection With Mediation

On May 17, 2013, the parties engaged in a mandatory mediation of this matter before Ms. Krista Gottlieb, pursuant to the ADR Plan. (Graff Decl. ¶¶ 7-8; Ronan Decl. ¶ 11). In the context of that mediation, Defendants again conveyed an offer to reinstate Plaintiff through Ms. Gottlieb, together with a cash payment of $25,000, in full satisfaction of Plaintiff's claims. (*Id.*) On or about July 1, 2013, Attorney Ronan sent an email to the mediator copying Mr. Graff, reiterating the offer, and referring to it for the first time as being "without condition." ("July Email") (Defs.' Ex. List (ECF # 51) at 7 (No. D102)).[2]

It is unclear what evidence aside from the July Email Defendants intend to introduce at trial. Although Ms. D'Arcangelo was present at the mediation, Defendants stated at the Argument that they will not introduce testimony from Ms. D'Arcangelo—or, presumably, from anyone else—regarding offers made in that setting. (*See* Vallas Decl. Ex. A, at 5:13-15 ("It is not M&T's intention to rely upon [Ms. D'Arcangelo] as it relates to anything that may have happened during mediation of this case.")). Moreover, as discussed at greater length below, the July Email itself is not only inadmissible hearsay under Rule 802, but must also be categorically excluded under the Western District's ADR Plan. *See* ADR Plan § 5.10(A)(3).

---

[2] Defendants have not provided the Court with a copy of this email while the instant motion is pending to avoid violating the ADR plan's prohibition on disclosing communications made "in connection" with a mediation. *See* ADR Plan § 5.10(A)(3).

4

**ARGUMENT**

As developed in Plaintiff's initial moving papers, the offers of reinstatement outlined above are clearly inadmissible under Rule 408. *See Pierce v. F.R. Tripler & Co.*, 955 F. 2d 820, 827-28 (2d Cir. 1992). Even more perplexingly, however, as a result of Attorney Ronan's removal from Defendants' Witness List, M&T has not proffered any competent evidence of the offers in the first place. Any testimony from Ms. D'Arcangelo about the October 2012 telephone conference to which she was not a party would be inadmissible as hearsay under Fed. R. Evid. 802. Although Ms. D'Arcangelo was present, seven months later, at the mediation under the District's ADR Plan in May 2013 Defendants have stated that they do <u>not</u> intend to rely on any witness's testimony regarding "anything that may have happened during mediation of this case," (*See* Vallas Decl. Ex. A, at 5:13-15), nor, presumably, in any communication related to the mediation pursuant to the ADR Plan. *See* ADR Plan § 5.10(A)(3); *see also Spoth v. M/Y Sandi Beaches*, 09-cv-00647, 2010 WL 2710525, at *6 (W.D.N.Y. July 7, 2010). Finally, because Defendants only communicated the offers to counsel for Plaintiff rather than to Plaintiff herself, any testimony from Ms. Sheng about the offers would be protected by attorney-client privilege. *See* N.Y. Code Prof'l Responsibility 1.6.

Although it is therefore difficult to determine precisely what Defendants intend to rely upon regarding the offers, any evidence whatsoever that Defendants might attempt to introduce would be inappropriate on this record. Accordingly, Plaintiff's motion *in limine* should be granted in its entirety.

**I.     The October 2012 Offer Must Be Excluded Under Rule 408**

Plaintiff does not dispute the fact that an unconditional offer of reinstatement has the effect of tolling the accrual of backpay and foreclosing the recovery of frontpay in employment

5

discrimination cases. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 229-30 (1982). It is equally well-established, however, that conditional offers, which are in any way contingent upon a commitment from the employee to abandon or modify her suit against the employer, do not have such an effect. *See Pierce v. F.R. Tripler & Co.*, 955 F. 2d 820, 827-28 (2d Cir. 1992). Instead, such offers of reinstatement are considered "compromise offers" under Rule 408 and are therefore inadmissible. *See* Fed. R. Evid. 408; *see also Pierce*, 955 F. at 828.

The Second Circuit has established a comprehensive framework for determining the extent to which an offer of reinstatement can be considered either unconditional or an "offer to compromise" under Rule 408. Specifically, the Second Circuit has held that "where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408." *Pierce*, 955 F. at 828. This standard is motivated by an understandable concern that the admission of evidence regarding offers conveyed in settlement communications between counsel would require the testimony of the attorneys themselves, implicating the advocate-witness rule and thus creating a tangle of disqualifications and potential gamesmanship. *See id.* at 826-27; *see also* N.Y. Code Prof'l Responsibility 3.7(a).

As the Second Circuit held, "This undesirable result is largely avoided by excluding evidence of settlement negotiations." *Pierce*, 955 F. at 828. The offers at issue here were made between attorneys following the threat of litigation and in response to a monetary demand. They are, therefore, precisely the type of offers found by the *Pierce* Court to be inadmissible.

### 1. The October Offer Occurred During A Settlement Negotiation

As an initial matter, as noted above, Defendants have stated on several occasions their position that Ms. Sheng was still an employee of M&T at the time the conference took place,

6

presumably because they believe this assertion has some bearing on their argument that the evidence of the October offer should be admitted. (*See, e.g.*, Vallas Decl. Ex. A, at 9:24 to 10:6 (noting that the offer "was made to [Ms. Sheng] . . . while she was still an employee of the bank. There was no claim at that point in time . . . . So there would have been absolutely no reason under those circumstances for the bank to have even sought any sort of release of claims against her."))

In point of fact, October 12, 2012 was—by Defendants' own admission—Ms. Sheng's official termination date. (Vallas Decl. II Ex. C at 1 (referring to October 12, 2012 as the "Termination Date"). Moreover, Ms. Sheng's AWA had been revoked and she had been placed on non-working leave as of September 15, and she was presented with a Severance Agreement on September 11—over a month prior to the October conversation. (*Id.*)

More importantly, however, whether or not Ms. Sheng was formally employed by M&T at the time the offer of reinstatement was made is utterly immaterial to its admissibility. Even if Ms. Sheng remained formally employed by Defendants, she would still have had viable claims against them, insofar as the revocation of her AWA—which indisputably occurred in June 2012—represents an adverse act that would support claims of discrimination and retaliation. *See Goonan v. Fed. Reserve Bank of N.Y.*, 12-cv-3859 (JPO), 2014 WL 3610990, at *9 (S.D.N.Y. July 22, 2014) (noting that "[i]t is well established that requesting an accommodation . . . [is] behavior protected from an employer's retaliation," and finding that the plaintiff could maintain a retaliation claim on the theory that his employer "retaliated against him for his accommodation request by holding him to a different and higher standard for telecommuting than was applied to other, non-disabled employees" regardless of whether he was terminated (internal quotations marks omitted) (citing *Carreras v. Sajo, Garcia & Partners*, 596 F. 3d 25, 35–36 (1st Cir. 2010);

7

*Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002)). Even had Plaintiff remained a formal employee of Defendants and so had no economic damages at the time of the October offer, she would therefore nevertheless have had viable claims to recover compensatory, punitive, and liquidated damages, together with fees and costs, for the unlawful rescission of her AWA and placement on leave. The October offer was made during a telephone discussion scheduled in response to a letter setting forth these basic facts, and was, of course, made in an effort to settle those claims.

Indeed, the conditional nature of the offers is underscored by Defendants' own characterization of them in a letter sent by Attorney Ronan to Ms. Maureen C. Kielt, the EEOC investigator assigned to Plaintiff's claim, on February 27, 2013. Attorney Ronan responded to the Investigator's suggestion that Defendants' conditional offers of reinstatement undermine their position that the accommodation requested by Plaintiff was infeasible by stating that:

> Our decision to offer Ms. Sheng the accommodation she had demanded ***was not unlike any other offer of compromise*** M&T— and a myriad of other parties—may offer to avoid the vicissitudes of litigation. Distasteful and disruptive as it may have been, ***we ultimately decided to capitulate to Ms. Sheng's demand solely because we recognized that it would be better than incurring time and expense fighting the issue***. If you interpret our pragmatism as evidence of wrongdoing, we disagree.

(Vallas Reply Decl. in Further Supp. of Pl.'s Mot. *in Limine* (Oct. 6, 2014) at Ex. A (ECF # 63-1)). It is somewhat surprising that Defendants now attempt to argue that an offer they previously characterized to a federal agency as an "offer of compromise"—the precise heading of Rule 408—made "to avoid the vicissitudes of litigation" was in no way conditioned upon Plaintiff abandoning her claims against Defendants.

### 2. The Offer Is Inadmissible Under Rule 408 Regardless Of Whether There Was Explicit Discussion Of A Release

Defendants moreover premise their argument on the mistaken impression that, for an offer to be considered "conditional" and therefore within the scope of prohibition in Rule 408, it must be accompanied by explicit negotiations about a release of claims. (*See* Defs.' Mem. in Opp. to Pls.' Mot. in Limine at 5 (noting that the severance agreement presented to Plaintiff in September 2012—despite Defendants' contention that Ms. Sheng was still employed during the October conversation—contained an explicit release, and suggesting that "[i]t is possible that Plaintiff is confusing or conflating the release of claims accompanying that severance package with the agreement to allow here to continue working in her position remotely."). A cursory reading of *Pierce*, however, demonstrates the speciousness of this reasoning.

The offer at issue in *Pierce*—like the offer here—was communicated in a telephone conference between counsel for the parties. *See Pierce*, 955 F. at 824. In response to the offer, Plaintiff's attorney stated, "If you are willing to make this offer of employment . . . without regard to the settlement of Mr. Pierce's claims, he would of course be willing to give it serious consideration." *Id.* Defense counsel then claimed that he was "confused" by the suggestion, and that "he would not offer the job 'just for the purposes of settling the lawsuit.'" *Id.* Subsequently, in response to a letter from Plaintiff's counsel restating her understanding that the reinstatement offer was conditioned on a release, Defendant's attorney wrote back "implying the offer had not been conditioned upon such a release, but that they should agree to disagree about what was said.'" *Id.* This evidence was excluded by the Southern District of New York at trial,[3] a decision subsequently affirmed by the Second Circuit. *Id.* at 828.

---

[3] The *Pierce* trial court in fact sanctioned defendant's counsel for attempting to introduce the offer based on arguments the District Court characterized as "absurd." *Pierce*, 955 F. 2d at

9

Here, the October 2012 offer—communicated by attorney Ronan to attorney Graff in a private telephone conference (in response to a letter by attorney Graff threatening litigation in light of Defendants' conduct (occurring prior even to the date of that letter))—falls squarely within the category of evidence found to be inadmissible by the Second Circuit. The offer at issue was communicated during a telephone conversation between counsel held in response to a letter threatening litigation and immediately Defendants' rejection of a monetary demand made by Plaintiff's counsel. The lack of any explicit mention of a waiver during the conversation is absolutely immaterial. Indeed, in *Pierce,* the offer was excluded despite defense counsel's contemporaneous written denial that the offer was conditioned upon a release. *Id.* at 823. Moreover, as set forth above, and as M&T and its counsel admit, M&T's Human Resources representative had presented Ms. Sheng with a proposed severance and waiver of claims (in a communication stating that Ms. Sheng's employment would be terminated on October 12 should she decline to execute the separation agreement and waiver) well-before Mr. Graff and the Ottinger Firm's first communication to M&T.

The Second Circuit has subsequently reinforced this standard by demonstrating the type of "unconditional" offer that is admissible. In *Lightfoot v. Union Carbide Corp.*, the Second Circuit affirmed the trial court's admission of an unconditional offer made to Plaintiff to restore him "on the same terms and conditions as existed at the time of his termination and with no loss of service credit." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 904 (2d Cir. 1997). This offer was not made by counsel in the context of a settlement discussion, but by letter directly from the Vice President of the Company to the plaintiff/former employee. *Id.* As such, it

---

829. Although the Second Circuit reversed the imposition of sanctions because of a lack of "controlling authority" on the issue at that time, *Pierce* itself and its progeny now represent precisely such controlling authority. *Id.*

implicated none of the concerns regarding the advocate-witness rule that animated the *Pierce* decision, and could therefore be used by defendants as evidence of lack of mitigation. Of course, as noted above, no such offer was made here. Accordingly, Plaintiff's motion *in limine* should be granted in its entirety.

    **II.**    **The Offers Made In Connection With Mediation Must Be Excluded Under Rule 408 And The District's ADR Plan**

It is unnecessary to address the offers made in the connection with mediation at great length, as Defendants have indicated that they do not intend to "rely upon [Ms. D'Arcangelo] as it relates to anything that may have happened during mediation of this case." (*See* Vallas Decl. Ex. A, at 5:13-15). Defendants, however, have yet to retract the email sent by Attorney Ronan to Ms. Gottlieb in July 2013. (Defs.' Ex. List (ECF # 51) at 7 (No. D102)). That email, sent directly to the mediator, is without question a communication made "in connection with mediation." *See* ADR Plan § 5.10(A)(3). As such, Defendants are categorically prohibited from introducing it—or any other evidence related to the mediation—for any purpose. *See, e.g.*, *Calka v. Kucker Kraus & Bruh*, 167 F. 3d 144, 146 (2d Cir. 1999) (discussing the need to maintain confidentiality of settlement discussions in court settlement conferences because the disclosure of such communications "would have a chilling effect" on the parties, and finding that disclosure was "highly improper and will not be condoned"); *Spoth v. M/Y Sandi Beaches*, 09-cv-0647 (WMS)(LGF), 2010 WL 2710525, at *6 (W.D.N.Y. July 7, 2010) (sanctioning counsel pursuant to Section 2.3 of the District's ADR plan for revealing communications made in the context of mediation, as "[s]trict confidentiality regarding details of mediation discussions is the touchstone of any effective mediation program and Defendant's disregard reflects a near cavalier disregard for that important principle"; and noting that "[a] careful reading of the ADR Plan establishes

11

that its confidentiality requirement provides for no exception in the case of direct communications to the court").

### III. Evidence Of The Offers Must Be Excluded Pursuant To Rule 802 As Hearsay

Based on the foregoing, it is clear that any evidence of the reinstatement offers in this matter would be inadmissible under Rule 408 and the District's ADR Plan. Significantly, however, even absent these prohibitions, Defendants have not proffered any competent evidence of the offers in the first place. Neither of the parties to the October 2012 conversation—Attorney Graff and Attorney Ronan—intend to testify about what was said. (*See* Vallas Decl. Ex. A, at 2:20-25 to 3:1-2). Defendants also offer the testimony of Ms. D'Arcangelo about the "unconditional nature of the offers of employment extended to Plaintiff." (Defs.' Witness List at 1). As further developed during the argument, Ms. D'Arcangelo would testify that "it was her intention that any . . . offer that was extended to Ms. Sheng was unconditional." (*See* Vallas Decl. Ex. A, at 5:23-25). Of course, as Ms. D'Arcangelo was not involved in actually conveying the offers to Ms. Sheng, it is absolutely beyond cavil that her testimony on the subject would be hearsay under Fed. R. Evid. 802. Aside from what was actually conveyed to Ms. Sheng, it is difficult to imagine what possible relevance Ms. D'Arcangelo's "understanding" or "intention" might have to Plaintiff's claims. *Cf.* Fed. R. Evid. 403 (permitting the court to exclude evidence if its probative value is substantially outweighed by unfair prejudice).

Absent testimony from Attorney Ronan or Attorney Graff—the only parties to the October 2012 telephone conference—the only evidence that might be probative on the question of whether an unconditional offer was made to Ms. Sheng would be the testimony of Ms. Sheng herself, concerning information that she learned through communications with her attorney, Mr. Graff, regarding Mr. Graff's settlement negotiations with M&T's counsel. As noted above,

however, no offer was conveyed directly to Ms. Sheng. (*See* Vallas Decl. Ex. B at 165:23-23 to 166:1-5). Such testimony would therefore be absolutely prohibited by attorney-client privilege. *See* N.Y. Code Prof'l Responsibility 1.6.

Accordingly, because Defendants have offered no competent evidence of the offers in question, and because such offers would be inadmissible in any case under Rule 408 and the ADR Plan, Plaintiff requests that the Court grant its motion *in limine* in its entirety.

## CONCLUSION

Based upon the foregoing, Plaintiff Jia Sheng respectfully requests that this Court grant her motion *in limine* in its entirety, and grant such other and further relief as it may deem just and proper.

Dated: October 17, 2014
      New York, New York

Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

By: _____
    George D. Vallas
    Ariel Y. Graff

401 Park Avenue South
New York, New York 10016
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
george@ottingerlaw.com
ari@ottingerlaw.com

*Counsel for Plaintiff*