UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Jia Sheng,

                          Plaintiff,

                                                    **Hon. Hugh B. Scott**


                                                    12CV1103[1]

            v.
                                                    **Order**



M&T Bank Corporation et al.,

                          Defendant.
_____

      Again before the Court is the question of whether or not the defendant may introduce

evidence at trial relating to a disputed offer of reinstatement the defendants' allege was made to

the plaintiff. A hearing was held on October 29, 2014 with respect to the facts and circumstances

relating to the October 12, 2012 conversation in which Sean Ronan, Esq., on behalf of M&T,

purportedly extended an offer of reinstatement to Ariel Graff, Esq., on behalf of the plaintiff.



                              **Background**

      The plaintiff, Jia Sheng ("Sheng"), brings this action claiming that M&T Bank

Corporation ("M&T")[2]  violated her rights under the Family Medical Leave Act, 29 U.S.C.

_____

      [1]   The parties have consented to the jurisdiction of the Magistrate Judge (Docket No. 39).

      [2]   The named defendants are "M&T Bank Corporation, and Manufacturers & Traders
Trust Company d/b/a M&T Bank."  The defendants are referred to collectively herein as "M&T"
or "the Bank."

§2601 et seq, ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq.

("Title VII"), the Americans with Disability Act of 1990, 42 us §12101 et seq. ("ADA"), the

California Family Rights Act, Cal. Gov. Code §12945.2 ("CFRA"), the California Pregnancy

Disability Leave Law, Cal. Gov. Code §12945(a) ("PDLL"), the New York State Human Rights

Law, N.Y. Executive Law §290 et seq. ("NYSHRL"), and the Califorina Fair Employment and

Housing Act, Cal. Gov. Code §12940 et seq. ("FEHA"). (Docket No. 21).


**Motion in Limine**[3]

The question of whether the defendant can introduce evidence at trial relating to a

disputed offer of reinstatement the defendants' allege was made to the plaintiff is important

because an unconditional offer of reinstatement acts to cut off damages for back pay as of the

date of the unconditional offer.  Ford Motor Co. v. EEOC, 458 U.S. 219 (1982).  With the

exception of the motivation for changing the plaintiff's remote work arrangement, the facts

leading up to the plaintiff's termination do not appear to be in dispute. In January of 2010, the

plaintiff was employed by M&T in Buffalo, New York as a Quality Control Team Lead. In

March of 2011, she had decided to resign her position with M&T to relocate to California where

her husband had obtained a job.  Sheng claims that her supervisor convinced her not to resign,

but instead an alternative work arrangement was agreed to so that Sheng could continue to work

remotely from California. (Docket No. 21 at ¶¶13-16).  The plaintiff contends that in May of

---

[3]   This issue was addressed by the Court in an Order dated October 10, 2014 (Docket No. 65). After a pretrial conference on October 14, 2014, the Court subsequently requested further briefing with respect to the circumstances under which any offers of reinstatement were made. (Docket No. Nos. 66 and 68).

2012, she advised M&T that she was pregnant. (Docket No. 21 at ¶ 18).  According to the plaintiff, on June 28, 2012 she was advised that M&T had modified its AWA policy and that she would be required to be physically present in Buffalo at least two days per week. (Docket No. 21 at ¶¶ 19-21).  Sheng provided M&T with a letter from her obstetrician stating that she was not to fly during the remainder of her pregnancy. (Docket No. 21 at ¶¶23-27).  Initially, M&T refused to make any accommodation, and by letter dated September 11, 2012, M&T revoked her authorization to work remotely from California notified her that she would be terminated effective October 12, 2012. (Docket No. 21 at ¶¶ 30-31; Docket No. 72 at page 2).  The September 11, 2012 letter also included a severance agreement which offered a severance payment in exchange for a release of claims. (Docket No. 72 at page 2). The only dispute with the forgoing appears to be that the plaintiff contends that the change in her AWA status was related to her pregnancy, while the defendants assert that change in AWA policy was related to the reorganization of Bank's Central Technology ("CT") department, and unrelated to Sheng's pregnancy.

The facts leading up to the alleged offer of reinstatement also do not appear to be in dispute.  Sheng engaged attorney Ariel Graff, Esq. ("Graff") to represent her with respect to her employment status with M&T.  On September 20, 2012, Graff sent a letter to M&T[4] stating that he believed the Bank's revocation of Sheng's AWA and planned termination on October 12, 2012 were illegal. (Docket No. 72 at page 2-3).  In response to Graff's letter, email correspondence between Graff and defendant's counsel, Sean Ronan, Esq. ("Ronan"), resulted in the scheduling of a phone conference to take place on October 12, 2012 – which coincidently

---

[4]    Identified as Court Exhibit 1 during the October 29, 2014 hearing.

3

was the plaintiff's effective termination date.  Only Graff and Ronan participated in the October

12, 2012 telephone call. (Docket No. 72 at page 3). During that phone conference, the plaintiff

acknowledges that Ronan "rejected ... Graff's monetary demand but offered to reinstate Ms.

Sheng instead." (Docket No. 72 at page 3).[5]   During the October 29, 2014 hearing, Ronan

testified that during the October 12, 2012 conference call, Ronan advised Graff that M&T had

decided that Sheng could continue to work remotely in California for the remainder of her

pregnancy.  Ronan stated that although Graff had represented that the plaintiff was seeking two

years pay (apparently in settlement of any claims she might have), the offer of reinstatement was

not in response to that demand and that it was an unconditional offer.  Graff also testified at the

hearing. Graff stated that his initial September 20, 2012 letter was styled as a "confidential

communication for settlement purposes only" (See Court Exhibit 1) and that prior to engaging in

the conversation with Ronan on October 12, 2012, Graff expressly advised Ronan that their

conversation was subject to Rule 408. Graff represented that Ronan agreed with that

representation. This testimony by Graff has not been contested by the defendant. Significantly, at

the hearing, Graff did not deny that Ronan had offered to have Sheng return to work remotely for

the remainder of her pregnancy. Further, Graff did not identify any condition relating to the offer

of reinstatment.  However, Graff maintains that any such offer is inadmissible under Rule 408.

 Generally, Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not
> admissible--on behalf of any party--either to prove or disprove the
> validity or amount of a disputed claim or to impeach by a prior
> inconsistent statement or a contradiction:

---

[5]

(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

As noted above, in <u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219 (1982), the Supreme Court held that when an employer makes an ***unconditional*** offer to reinstate an employee terminated as a result of discrimination, the employee's rejection of that offer forecloses any claim for future front pay and tolls the continuing accrual of back-pay liability under Title VII of the Civil Rights Act of 1964. Thus, back pay is tolled as of the date of the employee's rejection of the unconditional offer of reinstatement.  If an unconditional offer for reinstatement tolls damages, evidence of that unconditional offer must be admissible.  The Second Circuit rejected the argument that such evidence was barred under Rule 408, stating that "[b]y definition, an unconditional offer may not require the employee to abandon or modify [her] suit, and no such request was made by defendants. The offer therefore cannot be considered an offer of settlement or compromise." <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898 (2d. Cir. 1997).

The plaintiff's reliance on <u>Pierce v. F.R. Tripler</u>, 955 F.2d. 820 (2d. Cir. 1992) is not persuasive.  In <u>Pierce</u>, as here, a verbal reinstatement offer was extended by the defendant's attorney to plaintiff's counsel.  The defendant's attorney moved to withdraw as counsel because he intended to testify about the substance of the offer. <u>Pierce</u>, 955 F.2d. at 828. After a hearing,

5

the Court, however, determined that the offer of reinstatement in <u>Pierce</u> was not "unambiguously unconditional" <u>Pierce</u>, 955 F.2d. at 826.  The District Court did not address whether the offer was precluded under Rule 408. Upon appeal, the Second Circuit held that because the offer was extended by defendant's counsel to the plaintiff's counsel, any such offer is "presumed to be an offer within the scope of Rule 408." <u>Pierce</u>, 955 F.2d. at 827. In <u>Pierce</u>, the Court concluded that the offer should have been excluded under Rule 408. <u>Pierce</u>, 955 F.2d. at 829.  However, the Court in <u>Pierce</u> held that the presumption that Rule 408 could be rebutted where the party seeking admission of an offer demonstrates convincingly that the offer was not an attempt to compromise the claim. <u>Pierce</u>, 955 F.2d. at 827.  Here, the October 12, 2012 offer was extended by Ronan, who is a Vice President of M&T as well as counsel.  In any event, the reasoning underlying the Second Circuit's decision in <u>Lightfoot</u> is not dependent upon whether the unconditional offer was extended directly by a human resources administrator or a corporate defendant's in-house counsel.  If the offer was unconditional, pursuant to <u>Lightfoot</u>, it cannot be construed as an offer to settle or compromise under Rule 408. The Court notes that <u>Pierce</u> was decided several years prior to the Second Circuit's decision in <u>Lightfoot</u> and may no longer be good law on this issue. Where an offer of reinstatement is unconditional, and the plaintiff was not required to abandon any claims to take advantage of the offer, then it should not make a difference whether the offer was extended by counsel or by an administrator, particularly where, as here, the offer was extended prior to the commencement of any litigation by an individual who was *both* an officer of the Bank and in-house counsel.  Significantly, at the October 29, 2014 hearing, Graff did not identify any condition attached to the alleged offer of reinstatement. Under these circumstances, there is no evidence to suggest that the offer of reinstatement was

6

conditioned upon the compromise of the plaintiff's claims notwithstanding the fact that it was

conveyed by counsel during a session where the settlement or compromise of the plaintiff's

claims was also discussed. See Thomas v. Resort Health Related Facility, 539 F.Supp. 630

(E.D.N.Y., 1982)(Offer extended by counsel during settlement discussions not barred by Rule

408, purpose of unconditional offer of reinstatement is to show that back pay otherwise

recoverable after the date of its offer should not be allowed because the loss of back pay during

that period is not attributable to defendant's discrimination.). Accordingly, as a preliminary

matter, the Court finds that evidence as to the reinstatement offer extended on October 12, 2012

is admissible and not barred by Rule 408.

Ultimately, questions of fact exist as to whether the defendant made an unconditional

offer of reinstatement and whether the plaintiff reasonably refused the offer. These questions of

fact are to be resolved by the trier of fact. Pierce, 955 F.2d. at 830.[6] The Court finds that the

defendant may introduce evidence of an offer of reinstatement made to the plaintiff, through

---

[6] The Court had previously cited Jernigan v. Dalton Management Co., LLC, 819 F.Supp.2d 282 (S.D.N.Y. 2011) for the proposition that such questions of fact are to be determined by the Court. In Jernigan, the Court found that a reasonable juror would have had to find that an unconditional offer of reinstatement was extended. Jernigan, 819 F.Supp.2d at 291. Upon further review, Jernigan cities to Clarke v. Frank, 960 F.2d 1146, 1151 (2d. Cir. 1992) for the proposition that such questions of fact are to be determined by the Court. Clarke, in turn, cites to Pierce for this proposition. Pierce, however, held that "preliminary factual questions concerning the admissibility of evidence, such as whether an offer was made in the course of settlement negotiations, are to be determined by the court." Pierce, 955 at 827. In Pierce, the Court went on to hold that "[g]enerally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement" and "[w]hether an offer was unconditional for purposes of mitigation is similarly a question for the trier of fact." Pierce, 955 at 830. Thus, this Court does not read Pierce to stand for the proposition that ultimate factual questions relating to the unconditional nature of an offer of reinstatement or the reasonableness of any rejection of that offer are questions to be determined by the Court, as opposed to the trier of fact.

counsel, on October 12, 2012. The only competent evidence proffered by the defendant as to the

October 12, 2012 offer is the testimony of Ronan, the individual who extended the verbal offer to

Graff on October 12, 2012.[7]   It is evident that both Ronan and Graff are witnesses relating to

whether the defendant extended an unconditional offer and whether the plaintiff unreasonably

rejected that offer.  As such, both are disqualified from further participation in this matter, as

counsel, under the advocate-witness rule.  The New York Rules of Professional Conduct

---

[7]   The defendants also assert that a similar offer was extended to the plaintiff on May 17, 2013 during a mediation session with Krista Gottleb, Esq. ("Gottlieb") (but allegedly separate from discussions on the possibility of settling the instant action) (Docket No. 71 at page 3) and on July 1, 2013 when Ronan copied Graff on an email Ronan addressed to Gottlieb which referred to "other positions" the attorneys had discussed. In the July 1, 2013 email, Ronan instructed Graff to "advise at your earliest convenience whether your client remains interested in this position." (Docket No. 71, Exhibit A). The defendants do not appear to intend to present evidence of any reinstatement offer extended during the May 17, 2013 mediation session, inasmuch as their papers do not suggest any manner in which they would present such evidence at trial.  However, the defendants propose to offer evidence of the October 12, 2012 offer through the testimony Martha D'Arcangelo and the plaintiff herself.  The defendants assert that D'Arcangelo, the Vice President of Human Resources for M&T, had approved an offer to allow Sheng to continue to work remotely from California which was supposed to be extended by Ronan. (Docket No. 71 at page 8).  The defendants also contend that the plaintiff acknowledged at her deposition that she was aware that such an offer had been made. (Docket No. 71 at page 8). The portion of the deposition cited by the defendants reflects that the plaintiff was aware that some form of an offer had been made, but the plaintiff stated that it was never extended in written form, and that she did not see any such offer. (Docket No. 71 at pages 8-9). This testimony is not competent evidence as to the terms of the offer or the unconditional nature of the offer. With respect to the July 1, 2013 email, the defendants propose to call John Walp ("Walp"), an Administrative Vice President and the Bank's Chief Information Security Officer, to testify that the email was kept as a business record at M&T, and that the email was successfully delivered to the plaintiff's counsel. (Docket No. 71 at pages 9-10).  The Court finds that none of this evidence proffered by the defendant is competent or admissible to prove whether an unconditional offer of reinstatement was extended to the plaintiff. D'Archangelo was not present at the time Ronan extended the offer to Graff on October 12, 2012. She cannot testify with personal knowledge regarding the terms of any offer actually extended by Ronan. Similarly, the July 1, 2013 email from Ronan, which is actually addressed to the mediator and only copied to Graff, only vaguely refers to an some kind of offer extended to the plaintiff.  Moreover, the Court is not convinced that this email is admissible as proposed by the defendant.

("NYPRC"), Rule 3.7, provides that:

> (a) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>> (1) the testimony relates solely to an uncontested issue;
>> (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
>> (3) disqualification of the lawyer would work substantial hardship on the client;
>> (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
>> (5) the testimony is authorized by the tribunal.
> (b) A lawyer may not act as advocate before a tribunal in a matter if:
>> (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client; or
>> (2) the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9.

"It is well established that once representation is undertaken, a lawyer *must* withdraw as advocate if it appears that he must testify on behalf of his own client." Ramchair v. Conway, 601 F.3d 66 (2d. Cir. 2010) quoting People v. Rivera, 172 A.D.2d 633, 568 N.Y.S.2d 435(2d Dep't 1991); and citing People v. Paperno, 54 N.Y.2d 294, 299-300, 445 N.Y.S.2d 119, 429 N.E.2d 797, 800 (1981) ("The advocate-witness rule ... generally requires the lawyer to withdraw from employment when it appears that he ... will be called to testify regarding a disputed issue of fact.") (internal citations omitted).  Here, the Court finds that the testimony of Ronan and Graff is necessary on the issue of whether an unconditional offer was extended and whether that offer was reasonably rejected.   "[W]here neither party moves for disqualification, the court must intervene to ensure that the mandate of [the NYPRC] is followed." United States v. Benacquista,

2008 WL 2371478 (W.D.N.Y.,2008).[8]  Vallas and Frederick, who have also appeared in this

matter on behalf of the respective parties, are not disqualified under the advocate-witness rule or

NYPRC Rule 3.7.


**Other Issues**

The parties have filed papers discussing their respective positions as to the impact of a

determination allowing the admission of evidence relating to the offer of reinstatement.  (Docket

Nos. 80 & 81).  The Court will consider any such remaining legal issues, as appropriate,

subsequent to the jury trial in this case.

The plaintiff has submitted jury instructions which lump the FMLA, Title VII, ADA,

NYHRL and various California statutes into one generalized claim of discrimination.  The

plaintiff does not propose jury instructions which identify each element of each of these various

statutes. If the plaintiff objects to the jury instructions proposed by the defendant with respect to

these claims, the plaintiff is directed to provide alternative language for each of the plaintiff's

separate clams. Any such instructions shall identify the elements of each statute separately, along

with legal authority supporting instructions relating to the terms and elements of those claims.

Also, the plaintiff shall also provide jury instructions that separately address each of the

California statutes underlying the plaintiff's separate claims under those statutes.  Any such

further submissions shall be filed by November 3, 2014.

---

[8]  "A lawyer can choose, ... to participate actively in a client's business affairs-not just as an adviser, but also as a negotiator and agent. ... Such conduct is entirely proper. But if an attorney chooses to become intimately involved in the client's business, then he or she must be prepared to step aside if the matters involved result in litigation." <u>MacArthur v. Bank of New York</u>, 524 F.Supp. 1205 (S.D.N.Y.  1981).

The trial remains currently scheduled to commence on November 3, 2014.

So Ordered.


                                                    /s/ Hugh B. Scott
                                        United States Magistrate Judge
                                        Western District of New York

Buffalo, New York
October 30, 2014